## UNITED AIRCRAFT PRODUCTS, INC., Plaintiff-Appellee, v. WARRICK, Defendant-Appellant.

Ohio Appeals, First District, Hamilton County.

No. 6480. Decided March 26, 1945.

L. H. Mattern, Dayton, J. D. Chamberlain, Dayton, and Graydon, Head & Ritchey, Cincinnati, for Plaintiff-Appellee.

Gus W. Byttner and H. G. Dybvig, Dayton, for Defendant-Appellant.

### OPINION

By HILDEBRANDT, PJ.:

The trial court issued a decree of specific performance of a contract between the parties for the transfer to plaintiff of all defendant's interest in certain inventions relating to the manufacture of airplane accessories made by defendant while in plaintiff's employ, and granted an injunction against disclosure of trade or business secrets, or information secured during such term of employment.

The notice of appeal is given on law and fact. However, the requirements as to bond set forth in §12223-6, GC, not being met, the appeal will be retained here as effective on

questions of law only. **The Damar Realty Co. v City of Cleveland, 140 Oh St 432.**

Plaintiff manufactures, engineers, develops, designs, and sells aircraft accessories and had particularly designed and dealt in oil temperature regulators and pressure controls. Its products are used on government combat vehicles and their development is confidential and secret. It maintains extensive facilities, including testing facilities, for the conduct of said business.

Defendant, a graduate mechanical engineer, was employed by plaintiff in its engineering department continuously from September 1, 1940, to January 13, 1943. Prior to such employment, defendant had no knowledge of plaintiff's plant, products, engineering, and development problems and technique. On May 15, 1941, defendant, together with a fellow employee, conceived and sketched certain inventions, having to do with oil cooling and pressure control.

Incident to a change in active management occurring about May 1, 1941, so-called "Put On Contracts" were prepared and submitted to all plaintiff's employees, the stated object being to reduce to writing the existing verbal arrangement within the plant between plaintiff and its employees with reference to new developments and inventions within the plant and the secrcy thereof.

Subsequent to the preparation of the "Put On Contract," but prior to its submission to the employees for signature, defendant's co-inventor refused work submitted on a similar project, for the reason that the same seemingly was in conflict with their invention made at their own homes after hours and without use of company facilities. On request, this invention of May 15, 1941, was disclosed to the Company's patent attorney, who expressed to the co-inventors his opinion that such work on the outside was contrary to the Company's practice.

Thereafter, the "Put On Contract" was submitted to defendant prior to a conference requested by defendant with reference to his claim to the invention of May 15, 1941, he having refused to sign the "Put On Contract" before such conference.

Defendant's version is that at the conference held on August 22, 1941, between the President, Ex-Vice-President, Patent Attorney, himself, and co-inventor, a separate verbal agreement was entered into between the parties, whereby the co-inventors were to patent the invention of May 15, 1941, have a free hand in developing it within the plaintiff's plant and receive a proportionate share of the profits realized therefrom, to be determined by the Company.

The plaintiff's version is, that it was pointed out to the

co-inventors that the information and knowledge enabling them to conceive the sketch of May 15, 1941, necessarily came to them by virtue of their employment with plaintiff company and that independent devolopment and patent application by them was contrary to the known existing and verbal arrangement between the Company and its employees, and that no royalties could be paid to them in connection with the sketch of May 15, 1941. That after such reprimand, the co-inventors were assured that they would suffer no penalty by way of discrimination in opportunity for advancement with the Company, and it agreed to pay the $30.00 required to be advanced by the co-inventors for the patent search, incident to their application previously made.

Shortly after the conference, on the same day, defendant executed the "Put On Contract," set forth immediately below:

## "'A G R E E M E N T

"This agreement made this 22nd day of August, 1941 by and between Edward C. Warrick, hereinafter referred to as the party of the first part, and UNITED AIRCRAFT PRODUCTS, INC., an Ohio corporation, hereinafter called the Company.

"WITNESSETH:

"WHEREAS, the Company is engaged in the improvement, design and manufacture of technical and commercial apparatus, much of which is of a scientific character and is manufactured especially for specialized military and naval uses, which work is necessarily of a secret character; and

"WHEREAS, the Company employs in connection with such work a corps of engineers, an important portion of whose duties is to conduct experiments and to make improvements relative to such apparatus; and

"WHEREAS, the party of the first part desires to become employed as, or now is, a member of said engineering corps, and whereas one important part of his duties for which he will receive and/or now receives, his salary, is the development and invention of improvements in both existing designs of apparatus and in such new fields of endeavor as are determined or approved by the Company.

"In consideration of his employment as above stated and the payment of his salary, the party of the first part agrees that he will not, except to the extent authorized by the Company communicate or give any information, or disclose any drawings respecting or concerning any work or activity on which the Company is or may be engaged, where the party of the first part has knowledge or should have known under the circumstances that the Company and/or the United States Government desires to keep such work or activity secret.

"The party of the first part further agrees that any and all inventions, discoveries or improvements in any way relating to Aircraft Parts and Accessories, or other items of manufacture, manufactured and/or sold by said Company during the term of said employment, or to processes or apparatus particularly adapted to the manufacture of such Parts, Accessories, or other Items invented by him during the term of said employment, or to improvements on any such inventions whenever made by him in the line of work assigned to him by said Company, or any other line of work or investigation which the Company is, or may be, engaged in, during the term of said employment, which inventions or discoveries or improvements are now known to the party of the first part, or discovered or made by the party of the first part, either in whole or in part, during the term of said employment, shall immediately become the absolute property of the Company and shall be immediately disclosed to the Company for the sole use and benefit of the Company, and the party of the first part agrees to make application for such letters patent on said inventions as the Company may consider necessary, desirable or useful, and to sign and execute any and all papers incident to the filing, prosecution and perfection of said applications and the letters patent issued thereon; the Company, however, to bear and defray the costs and expenses incident to the procuration of said letters patent.

"The party of the first part further agrees that without further consideration he will sell and assign all his right, title and interest to such inventions to the Company, its successors or assigns, and give the Company the right to have the United States letters patent issued thereon, issued in the name of the Company, and will give the Company the right to apply for and obtain patents on such inventions in any and all countries foreign to the United States as the Company may select. No termination or cancellation of this agreement will relieve the first party's obligation hereunder to sign and execute any papers necessary to enable the Company to obtain for its own use, patent protection on said inventions, anything to the contrary herein notwithstanding.
                    "EDWARD C. WARRICK

"IN WITNESS WHEREOF, the said Company has caused this agreement to be duly signed by its proper officer, and the party of the first part has hereunto subscribed his name and affixed his seal at Dayton, Ohio, the day and year first above written.
          "UNITED AIRCRAFT PRODUCTS, INC.,
                    "By Cleeman Withers."

Defendant's contention here, based on the allegations of his second amended answer is:

First: That he refused to execute the "Put On Contract" until induced to do so by a contemporaneous agreement between the parties, whereby he turned over to the plaintiff the particular inventions of May 15, 1941, in reliance upon the promise of plaintiff to pay him a proportionate share of the benefits derived from the exploitations of said invention, and, by reason of said verbal agreement, the inventions of May 15, 1941, were not intended to be included in the "Put On Contract."

Second: That the intent of the "Put On Contract," as shown by its terms, does not include inventions made prior to August 22, 1941, the date thereof.

It is clear that the purpose and intention of plaintiff in the preparation and submission to its employees of the "Put On Contract" was to renew, make whole, and integrate in the written memorial the existing practice, understanding and agreement extant between plaintiff and each of its employees with reference to the subject-matter of the "Put On Contract." That defendant was aware of this is evident, as the record reveals he had opportunity to examine the "Put On Contract" a few days prior to August 22, 1941, and he testified:

"Q. Tell the court why you refused to execute it.

"A. Because the "Put On Contract" covered everything from the time we started working at United Aircraft Products until the termination of the employment. This invention we had made on our own would have been covered by this "Put On Contract," and we didn't think that was fair."

It, therefore, appears that defendant's first contention amounts to a claim that the "Put On Contract" was a partial integration only and he seeks to prove by parol a separate independent agreement. The law applicable to partial integration should therefore apply.

By the parol evidence rule, the integration of an agreement makes inoperative, which to add to or to vary the agreement, all contemporaneous oral agreements relating to the same subject-matter; and, also, unless in certain circumstances, not present here, all prior oral or written agreements relating thereto. It is stated that where there is integration of part of the terms of a contract a contemporaneous oral agreement operates to vary those terms only to the same extent as if the whole contract had been integrated. The oral agreement relied on here would only be admissible to establish the meaning of the integration, not necessary here, as the Court con-

siders the "Put On Contract" clear, or to prove facts rendering the agreement void or voidable, for fraud, illegality, duress, mistake, or insufficiency of consideration, affording grounds for relief by way of rescission or reformation, or for denying the remedy of specific performance. Expressed differently, the oral agreement would not be superseded or invalidated by subsequent or contemporaneous integration relating to the same subject-matter, if not inconsistent with the integrated contract and made for a separate consideration, or is such an agreement as ought naturally be made as a separate agreement by parties situated as were the parties to the written contract. See: Restatement of Law, Contracts, Vol. 1, section 237, et seq. The inherent probabilities present here are all against the defendant as it would have been very simple to except the invention of May 15, 1941 in the "Put On Contract" itself, if such was the intention of the parties and a reliance on the claimed oral agreement, together with a complete lack of certainty as to the proportionate share to be paid defendant and committing arbitrary determination of amount to plaintiff, lacks such ordinary prudence as to furnish a clear example of the reason for the rule.

In 12 Am. Jur., p. 758, section 235, it is stated:

"However, a written contract may properly be varied by an oral agreement only where it is collateral, is not inconsistent with express or implied conditions of the written contract, and in one which the parties could not reasonably be expected to embody in the writing."

In 17 O. Jur., pp. 524 and 525, section 425, it is stated:

"Where it is apparent from the writing itself that it does not embody the entire contract of the parties, but only some distinct and separable part, the case is not within the rule, and parol evidence which does not contradict the terms of what is written, but is consistent therewith, is admissible. In other words, where the verbal agreement is not inconsistent with, but supplementary to, the written agreement, parol evidence is admissible. In one case it is said that when it is made to appear by proper and competent means that the writing contains only part of the agreement entered into, parol evidence is competent to show what the parties really did agree to, with reference to the subject-matter of the contract. It has been held that to make such evidence admissible there must be such averments of fraud or mistake as would authorize a reformation of the instrument.

"As shown above, there is a presumption that a writing

includes the entire agreement of the parties. To permit terms to be ingrafted by mere parol evidence upon a written agreement would be attended with all the danger, laxity, and inconvenience which the general rule is calculated to exclude; for an agreement might, by such additions, be as effectually altered as if its very terms had been changed by parol evidence."   .

While the court below, in generous avoidance of technicalities, admitted evidence on the theory that the allegations of defendant's second amended answer were tantamount to pleading fraud, defendant does not specifically plead it, nor claim it in oral argument. Since the evidence admitted clearly tends to contradict not only the writing, but the clear implication of fact from the writing, that it expresses the whole agreement, it would clearly not be admissible in the absence of such claims of oppression. From the comprehensive and helpful citations furnished by all counsel, as well as by the court's independent research, it appears that the parol evidence rule has been frequently vindicated by both the admission and rejection of evidence in a proper case, depending upon the precise facts of each case. From the circumstances here it seems clear to the court it was not error prejudicial to defendant to limit the evidence adduced to proof of fraud.

Coming now to consider the construction of the "Put On Contract" resorted to by defendant, wherein its terms are labeled as being all in praesenti and the words "during the term of said employment" limited to that period of employment after August 22, 1941 only, thereby excluding from its operation and effect all inventions made during employment but prior to the date of the execution of the "Put On Contract," the court will follow the general rules as to necessity of construction, examining the writing from the familiar four corners, and construing it most strongly against the drawer thereof, with a view to ascertaining the meaning of the language used, and not the intention of any of the parties different therefrom:—

The first three paragraphs set forth the parties and are descriptive of the specialized character of the plant operation and duties of its corps of engineers and the secret character of the work.

Paragraph four states, in substance, in part defendant "now is" a member of the engineering corps, that as one important part of his duties for which he "now receives" his salary is the development and invention of improvements, etc. So far, the contract clearly refers to conditions and things existing prior to its execution.

Paragraph five states: "In consideration of his employment as above stated," that is, the prior existing employment and so long as it continues, "and the payment of his salary," clearly salary paid in the past and as earned in the future, defendant agrees not to disclose secret information concerninng work or activity in which the Company "is or may be engaged" when defendant "has knowledge or should have known under the circumstances" the Company or the Government desires secrecy. The phrase "is or may be engaged" clearly connotes present activity which is prior to the contract and carries with it, to complete the whole connotation and thought, past activity as well. The phrase "has knowledge" must mean knowledge presently acquired which is prior to execution of the contract and logically must include knowledge acquired in the past, so that he has it in the present.

Paragraph six refers to any and all inventions without limitation of any kind "during the term of said employment" that is, the employment referred to above, which covers existing or old employees, hence must logically refer to the whole term of employment from its inception, even though that inception antedated the "Put On Contract." The additional alternative provisions of Paragraph Six, including the phrase "during the term of said employment," are in the same category. In addition, the following language appears in paragraph six, towit, "which inventions, or discoveries or improvements 'are now known' to the party of the first part, or discovered or made by the party of the first part, either in whole or in part, during the term of said employment."

It seems clear that an invention now known, discovered, or made, either in whole or in part, would have to be an invention in existence at the time of the execution of the "Put On Contract" and necessarily arrived at during the term of employment prior thereto. Attempting to cover such inventions clearly shows the phrase during the term of said employment to refer to employment prior to the "Put On Contract," as well as after.

Entertaining the above views, it appears there is no reason for the application of rules of construction, whereby the Court might be led into the error of making a contract for the parties.

It further appears that defendant's invention of July 21, 1941 was disclosed and patent application made and assigned to plaintiff in compliance with the "Put On Contract." Hence, by their own acts, the parties have placed a construction on the contract including inventions prior to August 22, 1941. The Courts will follow the interpretation indicated by the conduct of the parties. **Courtright v Springer, 110 Oh St 547.**

The record further shows plaintiff maintained a merit award system pursuant to which defendant accepted a substantial award for meritorious work, seemingly inconsistent with his claim of a separate parol agreement.

In view of the foregoing, it is obvious that not only must any contention against the equitable jurisdiction of the court fail, but it appears the facts here present a case peculiarly apt for the exercise of that jurisdiction.

Considering now the injunctive relief granted, in Pomeroy's Eq. Jur., (5th Ed.) p. 941, it is stated:

"An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrines and rules; and it may be stated as a general proposition that wherever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which its terms permit. Where the agreement stipulates that certain acts shall not be done, an injunction preventing the commission of those acts is evidently the only mode of enforcement."

The evidence clearly shows a threatened breach and we find the injunction below properly granted.

There being no errors on the record, prejudicial to defendant, the judgment of the court below is in all respects affirmed.

HILDEBRANDT, PJ, and ROSS, J, concur in the Syllabus, Opinion and Judgment.

MATTHEWS, J, not participating.